UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRENDA GLOVER,

  Plaintiff,

v.

CONN APPLIANCES, INC.,

  Defendant.

                                    /

CASE NO.:

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, BRENDA GLOVER, by and through the undersigned counsel, and sues Defendant, CONN APPLIANCES, INC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Personal jurisdiction exists over Defendant as Defendant resides in this judicial district in The Woodlands, Texas.

7. The alleged violations described herein occurred in Harris County, Texas. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Texas, residing in Harris County.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation which was formed in Texas with its principal place of business located at 4055 Technology Forest Boulevard, Suite 210, The Woodlands, Texas 77381; which conducts business through its registered agent, C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

11. Defendant called Plaintiff approximately two-hundred (200) times in an attempt to solicit Plaintiff into purchasing merchandise from Defendant.

12. Plaintiff never purchased goods from Defendant, or entered into any contractual relationship with Defendant.

13. Some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received.

14. Defendant's Noble Systems automatic telephone dialing system dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's (FCC's) 2003 Order regarding the TCPA. See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14092 (2003); Ammons v. Ally Financial, Inc., No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018).

15. Defendant's ATDS dials telephone numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1). *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept. 20, 2018).

16. Defendant's ATDS dials telephone numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing

system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1). See *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept. 20, 2018).

17. In addition, Defendant called Plaintiff in Broadcast mode using both an artificial voice and pre-recorded messages as defined by Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

18. In broadcast mode, the system automatically calls customers with no human being involved at the time of dialing. If a customer answers a call made in this mode, he or she will be automatically connected to an artificial voice message through an IVR. Furthermore, in this mode Defendant has the option of leaving a pre-recorded message for the called party if it recognizes a voicemail.

19. Defendant also used their dialer in a Predictive mode to call Plaintiff's cell phone number.

20. In predictive mode (which Defendant now calls "system assisted mode", a term created for purposes of litigation and found nowhere within Defendant's policies and procedures) the system automatically calls customers with no human being involved at the time of dialing. If a customer answers a call made in this mode, the system will automatically transfer that caller to an available agent who will field the call.

21. At the time of dialing, agents fielding broadcast or predictive mode calls do not know what numbers are being dialed by the system, as the computer is randomly or sequentially dialing numbers without human intervention.

22. Agents only ever become aware of a customer being called if that customer answers and is then automatically transferred to the agent. At that time, the customer's

demographic information automatically populates on the agent's computer screen. Prior to this, agents have no idea who the system is auto-dialing.

23. Plaintiff also received "abandoned calls" from the Defendant.

24. Abandoned calls occur when Defendant's automated system calls more customers than it has agents available, and as a result a customer who answers hears nothing but dead air, as the Noble Systems automatic telephone dialing system is unable to transfer the call it dialed to a human being.

25. In total, Defendant uses its ATDS to make over 721,000 outbound calls per day with approximately 21,630 abandoned phone calls per day.

26. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (281) ***-6008, and was the called party and recipient of Defendant's calls.

27. Defendant placed an exorbitant number of calls to Plaintiff's cellular telephone (281) ***-6008 in an attempt to solicit Plaintiff into purchasing merchandise from Defendant.

28. On several occasions since Defendant's campaign of harassing automated calls began, Plaintiff instructed Defendant's agent(s) to stop calling her aforementioned cellular telephone number.

29. Plaintiff would repeatedly explain to Defendant that she was not interested in purchasing merchandise from Defendant and she never has purchased any items from Defendant.

30. Unfortunately, no matter how many times Plaintiff asked for the calls to stop, Defendant continued to harass Plaintiff by bombarding her with automated calls.

31. Defendant had no legitimate purpose in calling that many times, especially after she had requested that the calls stop. Rather, Defendant displayed a pattern of behavior that can only be described as an intentional and willful attempt to harass and abuse the Plaintiff.

32. As an example of one of Plaintiff's many conversations and requests to end the calls, in or about May of 2016, Plaintiff communicated with Defendant from her aforementioned cellular telephone number and explained she worked overnight and the daytime calls were made while she was sleeping, interfering with her ability to sleep. At that time, Plaintiff then demanded Defendant's agent to cease calling her.

33. During the aforementioned request to Defendant in or about May of 2016, Plaintiff unequivocally revoked any express consent Defendant may have believed they had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

34. Each subsequent call Defendant made to the Plaintiff's aforementioned cellular telephone number was made without the "express consent" of the Plaintiff.

35. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone numbers was knowing and willful.

36. Plaintiff's numerous verbal requests for the harassment to end were ignored.

37. Defendant has a corporate policy to use its automatic telephone dialing system and pre-recorded/artificial voice calls to harass and intimidate individuals like Plaintiff.

38. Defendant's policies and procedures are entirely toothless and are created simply for purposes of litigation. In reality, Defendant's agents and compliance teams ignore do not call requests from customers and allow those customers to be harassed by non-stop automated calls.

39. Defendant has been sued for violating the TCPA hundreds of times by consumers all across the country.

40. On August 13, 2019, Arbitrator Platt W. Davis III, in Houston, Texas, in the matter of (*St. Mary v. Conn Appliances, Inc.*) granted an award for Plaintiff finding that

Defendant's system is an ATDS and awarding damages for $371,000. Arbitrator Davis concluded that, "read as a whole, the TCPA definition of ATDS does not require that an ATDS have the capacity to randomly generate numbers to be called (which the Noble Dialer cannot do) but includes equipment with the capacity to dial stored, *i.e*., selected, numbers automatically (which capacity Noble Dialer possesses)." Regarding Conns' argument about human intervention, Arbitrator Davis properly concluded, "The proper focus is on whether the calls themselves are made with or without human intervention, *i.e.,* whether the numbers are dialed manually or automatically."

41. On August 7, 2019, Judge Mazzant of the Eastern District of Texas issued an order finding as follows: "Conn's provides high-interest loans to "customers that are considered higher-risk, subprime borrowers." This means that there is "a higher risk of customer default, higher delinquency rates, and higher losses than extending credit to more creditworthy customers." When a customer defaults, Conn's uses prerecorded voice messages to help collect debts that may be owed. Conns' "predictive dialer system… helps [it] contact… over 26,000 delinquent customers daily." Conn's also changes its phone number every day to make it impossible to block its calls." *Stevens v Conns' Inc., et al.,* 4:16-cv-00309-ALM Doc. 19, EDTX 08/07/2019. The TCPA claim was dismissed prior to the final arbitration hearing based on a contractual issue but the Arbitrator awarded, and the District court confirmed, $184,700 in actual damages under the TDCA, $28,895.26 in attorney's fees and pre-judgment interest totaling $6,476.80.

42. On May 15, 2019, Arbitrator Paul Flores (Dallas, TX) in *Larson v. Conn Appliances, Inc. (01-18-0002-1348)* found that "the system used by Defendant was an Automatic Telephone Dialing System ("ATDS") under the TCPA, both under the definition under the

TCPA, and under the FCC's 2003 and 2006 Orders." Arbitrator Flores awarded treble damages for willful and knowing violations of the TCPA for the 249 calls after a revocation of consent totaling $373,500.00.

43. On March 25, 2019, Arbitrator Michael Russell (Memphis, TN) in *Davis v. Conn Appliances, Inc. (AAA: 01-17-0006-8007)* found "that the system used by Defendant [Noble Dialer] was an ATDS." He went on to find that Plaintiff revoked her consent even when she failed to fully identify herself. He awarded $459,000 for willful and knowing violations of the TCPA for the 306 calls after Plaintiff revoked.

44. On September 4, 2018, Arbitrator David J. Harris (Memphis, TN) found that "Based upon the proof presented in this case, the Arbitrator finds that the system [Noble Dialer] used by Defendant to call Plaintiff was an ATDS". Arbitrator awarded $215,550 for the 431 calls made in violation of the TCPA after Plaintiff revoked consent. Defendant was ordered to pay a sum of $215,500 in the matter of the Arbitration between *Johnnie Williams, Jr. and Conn Appliances, Inc. (AAA Case No.: 01-17-0001-5149)*.

45. On January 10, 2018, Arbitrator L. Wearen Hughes, in the matter *Summers v. Conn Appliances, Inc. (AAA: 01-16-0004-1183)* found that "the system [Noble Dialer] used by Defendant to call Plaintiff was an ATDS." Arbitrator Hughes awarded a total of $311,000 for violations of the TCPA after Plaintiff had revoked consent.

46. On September 20, 2017, Arbitrator Carolyn Witherspoon (Memphis, TN), in the matter *Rogers v. Conn Appliances, Inc.* (*AAA: 01-17-0000-1802*), found that Conn's violated the TCPA, by calling the Plaintiff using its Noble system after she revoked consent. Arbitrator Witherspoon found a willful violation and awarded treble damages of $4,500.

47. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant's agents to remove the number.

48. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

49. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

50. Defendant has admitted in legal documents filed with the United States Securities and Exchange Commission that it utilizes a Noble Systems Predictive Dialer, which is a type of automatic telephone dialing system.

51. Defendant's corporate policies are not enforced and provided no enforcement or means for Plaintiff to have Plaintiff's numbers removed from Defendant's call list.

52. Defendant's business model is designed to abuse consumers with automated calls in an effort to pressure them into making their payments.

53. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

54. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

55. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff as to each call made to Plaintiff's cell phone over the last four years including May 2016 to the present when Plaintiff explained to Defendant that she never purchased items from them and never was going to purchase items in the future.

56. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

57. Defendant's non-stop calls wasted Plaintiff's time.

58. Plaintiff wasted time answering calls (including abandoned calls from Defendant), looking at missed calls, and listening to pre-recorded messages from Defendant. Her daily life and work routine were disrupted by the continuous calls from Defendant. Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

59. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendants' call.

60. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

61. Each and every call placed without express consent by Defendant to Plaintiff's cell phone were an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call

notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

62. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

63. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

64. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone service.

65. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by aggravation, loss of sleep, and irritability.

## COUNT I
**(Violation of the TCPA)**

66. Plaintiff fully incorporates and re-alleges paragraphs one (1) through sixty-five (65) as if fully set forth herein.

67. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop.

68. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without

Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

      **WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against CONN APPLIANCES, INC., for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

      Respectfully submitted,

      */s/ Joshua R. Kersey*
      Joshua R. Kersey
      Texas Bar No.: 24090206
      Morgan & Morgan Tampa, P.A.
      201 N. Franklin Street, Suite 700
      Tampa, Florida 33602
      Telephone: (813) 223-5505
      Facsimile: (813) 222-2490
      Primary Email: JKersey@ForThePeople.com
      Secondary Email: LDobbins@ForThePeople.com
      *Attorney for Plaintiff*
      *[Pro Hac Vice Motion Pending]*